*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CHARLES, Minors.

UNPUBLISHED
July 14, 2025
10:14 AM

No. 371280
Wayne Circuit Court
Family Division
LC No. 2022-000477-NA

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to the minor children, EMC, EC, and DC,[1] under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury to child or a sibling of the child), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent's home), and (k)(*iii*) (parent abused child or sibling by battering, torture, or other severe physical abuse).[2] We affirm.

## I. FACTUAL BACKGROUND

This case was previously before the Court on interlocutory appeal, following the trial court's entry of an order authorizing a petition for permanent custody of EMC and EC in May 2022. At the time, DC was not yet born. *In re Charles*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2022 (Docket No. 361596). There, we described the proceedings as follows:

---

[1] EMC and EC share the same middle initial. To avoid confusion, we will only refer to the eldest child, EMC, by his middle initial.

[2] The order also indicated that the trial court terminated the parental rights of EC and EMC's legal father, as well as DC's legal father. The children's fathers have not challenged the court's ruling and do not participate in this appeal.

On March 31, 2022, the Department of Health and Human Services [(DHHS)] filed a petition for removal and permanent custody of respondent's two children. The petition alleged that it was contrary to the children's welfare to remain in respondent's care because respondent mentally and physically abused her children and had a history of untreated mental illnesses. The petition was filed after respondent's two-month-old baby [BC] died under suspicious circumstances. All steps taken by Children's Protective Services (CPS) to prevent the children's removal failed.

At the preliminary hearing, respondent waived her right to a probable cause determination. [DHHS] presented evidence at the hearing that respondent abused her son, had untreated mental health issues, and that respondent's son was afraid of her. [DHHS] also introduced evidence that marks consistent with physical abuse were found on respondent's son. The trial court authorized the petition and removed the children, finding that it was contrary to the children's welfare to remain with respondent. [*Id*. at 1.]

This Court affirmed the order authorizing the petition. *Id*. at 2-3. The proceedings then continued in the trial court.

In November 2022, DHHS filed an amended petition for permanent custody. DHHS indicated that DC was born in September 2022, and that DHHS was now seeking termination of mother's parental rights to DC. The petition otherwise remained unchanged.

At a January 2023 pretrial hearing, mother's attorney requested that the court hold an adjudication bench trial via Zoom. The bench trial began on June 6, 2023. Relevant to this appeal, the parties appeared via Zoom. Mother experienced technical difficulties. She confirmed that she was able to see and hear the proceedings, but her audio output was not functioning, meaning that she could not be heard by the court when she attempted to speak. The trial court allowed mother to speak to her counsel in a breakout room and determine whether they could fix her audio connection. When the proceedings resumed, mother's counsel explained that her phone had no audio connection to allow her to speak and that she could not borrow a phone from someone else to connect to the proceedings. Mother's counsel requested an adjournment, but the court denied the request, reasoning that mother could still see the proceedings and listen to the testimony offered. The court stated that that it did not need to be able to hear mother unless and until she was called to testify.

At the hearing, a forensic interviewer from Kids-TALK Children's Advocacy Center testified that she interviewed EMC in February 2022. EMC told the interviewer that mother had placed him, EC, and infant BC, in a bed together. EMC stated that when he awoke, BC's lips were blue. EMC said that BC suffocated overnight, and believed that it was his fault. EMC further disclosed that mother had beaten him on multiple occasions with a broom, a belt, her hands, and what he described as a "white wire". EMC showed the interviewer several healed scars on his body from the abuse. He also stated that mother had beaten EC with a belt and her hands.

A CPS investigator testified that she was assigned to mother's case following BC's death. DHHS offered mother grief counseling services during the investigation. DHHS also offered

mother mental health services after the children's grandmother informed DHHS that mother suffered from mental health issues. Mother later disclosed that she suffered from bipolar disorder and depression. The investigator believed mother's mental health issues, for which she only sporadically sought treatment, impaired her ability to parent the children. She noted that mother would get extremely upset and would hang up during phone calls with CPS. The investigator further testified that EC and EMC had been placed with their maternal grandmother, and at one point, mother violated the safety plan by going to their grandmother's house and "start[ing] a fight with [EMC]", who was eight or nine years old at the time. The investigator stated that mother denied ever physically abusing the children or using corporal punishment measures to discipline them.

The children's foster care worker testified that she attempted to remain in contact with mother by phone and mail, but that her last contact with mother was in December 2022. The foster care worker testified that mother did not have appropriate housing or a means to financially support the children. She further testified that EMC had told her that he did not want to live with mother because he does not feel safe with her. EMC and EC remained with their maternal grandmother, and DC had been placed in a separate relative placement.

At the close of the hearing, the trial court found that grounds existed to exercise jurisdiction over the children under MCL 712A.2(b)(1) (parent neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for child's well-being) and (2) (unfit home or environment).

The statutory-grounds hearing commenced in September 2023. The children's foster care worker testified that the children would be harmed if returned to mother because mother suffered from severe mental health issues, for which she had not been treated since 2018, and had severely abused EC and EMC. Mother was not in contact with the children, and given that DHHS sought termination in the initial petition, mother had never been granted parenting time. The foster care worker further testified that mother had violated the children's safety plan in September 2023 by going to their grandmother's house unannounced. The foster care worker believed that mother's inability to follow the safety plan was further proof that the children would likely be harmed if returned to her care. A foster care worker who was previously assigned to the case confirmed that mother had violated the safety plan by going to the children's grandmother's house on approximately five separate occasions. EMC saw mother on each of those occasions and EC saw mother on at least two of those occasions.

The hearing continued in November 2023. At the hearing, the court found that statutory grounds existed to support terminating mother's parental rights under MCL 712A.19(b)(3)(*i*), (g), and (k)(*iii*). The trial court thereafter entered an order of adjudication finding statutory grounds existed to terminate mother's parental rights.[3]

---

[3] Notably, in its written order, the court found statutory grounds to terminate mother's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). Because "a court speaks through its written orders and judgments, not through its oral pronouncements[,]" *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009), the trial court's written order controls in this matter.

The best-interests hearing was held in April 2024. A foster care specialist assigned to the case testified that mother had no bond with the children. She reported that EMC told her mother abused him and EC, and that he did not want to see mother. The foster care specialist believed it was in the children's best interests to terminate mother's parental rights, noting that she had severely abused EMC and EC. Mother had never admitted to the abuse. The foster care specialist indicated that EMC was frightened of mother. She additionally testified that mother's mental health issues remained untreated, noting that mother's behavior was erratic and that she repeatedly violated the children's safety plan despite being ordered by the court to comply with that plan.

The foster care specialist testified that EC and EMC remained with their grandmother, who was interested in either a long-term guardianship or adoption. DC had been placed with the children's maternal grandfather, who indicated he would be willing to adopt her. The foster care specialist advocated for adoption over a guardianship arrangement, stating that the children were doing well in their placements and had sibling visits to maintain a bond with each other. The foster care specialist additionally believed that the children's grandmother could care for their medical needs, stating that EMC had been diagnosed with attention-deficit hyperactivity disorder and encopresis,[4] and that EC had a speech delay that required speech therapy. She did not believe that mother would be able to meet the children's needs. She testified that terminating mother's parental rights would thus be in the children's best interests.

Mother testified on her own behalf. She attested that she had been receiving mental health treatment every week for the past two years. She stated that she tried to keep in contact with the children's caseworker, but had only met with her once. Mother stated that she was looking for housing and received $900 per month in social security disability insurance (SSDI) payments. Mother testified that she believed she was a great mother and had a strong bond with the children. She did not believe terminating her parental rights would be in the children's best interests.

Following the close of testimony, the trial court found, by a preponderance of the evidence, that terminating mother's parental rights was in the children's best interests. The trial court considered the children's placement with relatives, as well as the potential for a long-term guardianship, noting that mother was homeless at the time. The court believed a guardianship would be inappropriate due to the children's young ages, and further observed that the children could be harmed if returned to mother in the future. The court found that the children were doing well and having their needs met in their current placements. The trial court further found that no meaningful bond existed between mother and the children, given mother's severe abuse toward EMC and EC. The court also observed that mother continued to suffer from severe mental health issues, which could further place the children at risk. The trial court believed that the children would be provided permanency and stability if mother's parental rights were terminated, and thus found that termination was in the children's best interests.

---

[4] Encopresis involves the involuntary release or leakage of fecal matter due to constipation. The condition affects approximately 1-3% of children. Cincinnati Children's Hospital, *Encopresis in Children* <https://www.cincinnatichildrens.org/health/e/encopresis> (accessed June 13, 2025).

The trial court thereafter entered an order terminating mother's parental rights. This appeal followed.

## II. ANALYSIS

### A. DUE PROCESS

Mother first argues that she was deprived of her right to due process when the trial court declined to adjourn the bench trial after mother experienced technical difficulties with her Zoom videoconferencing connection.

"Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021) (quotation marks and citation omitted).

"The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009). "Due process requires fundamental fairness, which is determined in a particular situation first by considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* (quotation marks and citations omitted). A parent's procedural due process rights are governed by various statutes, court rules, and departmental policies. *In re Sanborn*, 337 Mich App at 268. Relevant here is MCR 3.972(B)(1), which provides that a respondent has a right to be present during the adjudicative phase of a child protective proceeding, "but the court may proceed in the absence of the respondent provided notice has been served on the respondent." Indeed, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *In re Sanborn*, 337 Mich App at 268 (quotation marks and citation omitted). Also relevant is MCR 6.006(D), which provides that "[t]he use of telephonic, voice, video conferencing, or two-way interactive video technology, must be in accordance with any requirements and guidelines established by the State Court Administrative Office, and all proceedings at which such technology is used must be recorded verbatim by the court."

Mother was present at the bench trial via Zoom and confirmed that she could see and hear the proceedings, but indicated that she could not be heard while speaking. The court declined to adjourn the trial, stating that it did not need to hear mother unless and until she was called to testify. Mother was represented by counsel at the hearing. Counsel did not call her to testify, nor does she argue on appeal that she wished to testify, but was unable to do so. We also note that despite this technical problem mother had with her phone, she was able to communicate with counsel when the court placed them in a Zoom breakout room. The record is unclear as to how that was accomplished. Thus, there is no evidence that the trial court's decision to proceed with the virtual hearing despite mother's technical difficulties resulted in fundamental unfairness. Accordingly, mother's argument that her due-process rights were violated lacks merit.

### B. STATUTORY GROUNDS

Mother argues that the trial court erred by finding that statutory grounds existed to terminate her parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). We disagree.

"We review for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).

Termination is proper under MCL 712A.19b(3)(b)(*i*) when:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

The trial court's finding that mother abused EC and EMC was supported by clear and convincing evidence, including evidence that mother beat EMC to the point that he received permanent scarring, as well as evidence that she struck EC with her hands and a belt. The evidence further indicated that EMC was frightened of mother and did not want to be returned to her care. Because both children suffered nonaccidental injuries while in mother's care, there was clear and convincing evidence to establish statutory grounds for termination under MCL 712A.19b(3)(b)(*i*). Moreover, under a theory of anticipatory neglect, mother's abuse of EMC and EC is probative of how mother may treat DC if she were to be reunited with the children. *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). Ultimately, the trial court did not err by terminating mother's parental rights under MCL 712A.19b(3)(b)(*i*). If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). We thus decline to address the remaining grounds for termination of mother's parental rights.

## C. BEST INTERESTS

Mother additionally argues that the trial court erred by finding that terminating her parental rights was in the children's best interests. We disagree.

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best

interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. This Court focuses on the child when reviewing best interests. *In re Atchley*, 341 Mich App at 346.

In making its determination,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

"[A] trial court must explicitly address whether termination is appropriate in light of the children's placement with relatives." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016) (quotation marks and citation omitted). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted).

Here, the record indicated that mother's severe physical abuse of the children posed a significant risk of harm to them in the future. The trial court thus concluded that no bond existed between mother and the children. Mother additionally suffered from untreated mental health issues, lacked suitable housing, and lacked employment. Her primary source of income came from SSDI payments. The court thus concluded that she would not be able to provide the children with stability, permanency, and finality in the near future. On appeal, mother briefly argues that the trial court did not consider her testimony that she was in therapy and was in contact with her caseworker. However, the court did not appear to find this testimony credible. "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). On this record, we see no cause to disturb the trial court's credibility determination.

The court also found that termination was appropriate despite the children's placements with relatives, largely based on mother's severe abuse of EC and EMC. It reasoned that a guardianship would not be appropriate for the same reason and because all three children were very young. The record additionally indicated that the children's placements were able to care for their needs, including EC and EMC's medical needs, and were willing to adopt them. Ultimately, the record reflects that the trial court properly weighed all of the available evidence when making its best-interests determination. *In re White*, 303 Mich App at 713-714. Accordingly, the trial court did not err by finding that termination was in the children's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates